**IN THE COURT OF APPEALS OF IOWA**

No. 22-0524
Filed May 24, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ZACHARY JAMES LINDAUER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

        Zachary Lindauer appeals his conviction, which he believes was the result of an unfavorable evidentiary ruling.  **AFFIRMED.**

        Ronald W. Kepford of Kepford Law Firm, Winterset, for appellant.

        Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

During Zachary Lindauer's trial over charges for third-degree sexual abuse, a witness who allegedly saw Lindauer dancing with the woman it was claimed he sexually assaulted did not show up to testify. Believing the testimony was critical to his case, Lindauer requested that the district court allow the admission of the witness's discovery deposition testimony. The district court denied the request, finding Lindauer did not show the witness was unavailable and, thus, the deposition testimony was hearsay under Iowa Rule of Evidence 5.804(a). The jury found Lindauer guilty of the charged offense. After that conviction, Lindauer moved in arrest of judgment and for a new trial. The district court denied both motions on the grounds argued and then sentenced Lindauer to prison.[1] Lindauer appeals.

### Factual Background.

As students attending the University of Northern Iowa converged upon campus in August of 2018, some of the students decided to go out to socialize at the local bars. K.O., one of those students, went to an establishment with her new roommate and the roommate's friend. Before they did, however, the roommate brought vodka to her car, where the trio drank "shots" of straight vodka. Not an experienced drinker of alcohol, K.O. began to feel the effects of the hits. Next, they drank at an "18 and up bar," and K.O. decided to dance on the dance floor. She and Lindauer started to dance together, and everyone at trial characterized some of the dancing as "grinding." Lindauer also described K.O. as being amorous

---

[1] Lindauer was sentenced to a term of incarceration not to exceed ten years, plus a fine, surcharge, victim restitution fee, and sex offender civil penalty.

with him, testifying that they engaged in kissing and she gave him a "hickey" on his neck. Several persons at the bar saw the two dancing, including K.O.'s new roommate. Without any reference to a specific date, another woman, Danasha—the "missing witness"—also observed a woman and Lindauer dancing provocatively and provided the details in a discovery deposition taken before trial.

From there, Lindauer asked if they should go back to K.O.'s dorm room and she agreed. Footage taken from campus cameras show the two walking the few blocks back to the dorm; K.O. appeared to have balance issues and was aided by a more-steady Lindauer. At first, K.O. took Lindauer to the wrong building, but eventually video footage shows the two of them entering the elevator to go to K.O.'s dorm room. That elevator footage confirms Lindauer was at the dorm for approximately fifteen minutes.

From there, the versions diverge. K.O. testified that because of her intoxication, she could not remember giving Lindauer permission to have sexual intercourse with her and that she could not push him away from her. Lindauer asserts she did give him permission after he had laid "her down on the futon on her back" while "making out with her." He also maintains she did not resist his efforts to move her underwear aside and penetrate her vagina with his penis after he had asked to do so. After the sexual act, Lindauer testified he asked if she needed anything, K.O. said no, and he said good night then left.

The next morning, after telling a high school friend at the dorm what had happened and getting advice about what to do from that friend's mother, K.O. went to the hospital for an evaluation and made a report to law enforcement, including the campus police and the Cedar Falls Police. After the police successfully

identified and located Lindauer, he was brought into an interview.  Following an investigation, Lindauer was arrested and charged with sexual abuse in the third degree.

**Standard of Review and Preservation of Error.**

Rulings addressing the admissibility of hearsay are reviewed for correction of errors at law.  *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017).  The State does not contest error preservation.

**Discussion.**

For a brief period, Danasha and Lindauer interacted as friends through a social media app called "Snapchat."  On an evening she could not pin down, at the same bar where Lindauer met K.O., Danasha observed Lindauer with a "brown" woman[2] she did not know "making out . . . on the dance floor in front of everybody."  She described both the woman and Lindauer as being "pretty sloppy" and "grossly kissing each other and, like, drunk and sweaty, because it's the dance floor."  Danasha submitted to a discovery deposition and described these details.  As trial approached, Lindauer subpoenaed Danasha to testify at trial about her observations of Lindauer and the woman.  But, on the date Danasha appeared to testify, the trial had to be continued because a juror fell ill.  Because there had been difficulties getting Danasha to appear to testify, Lindauer asked the district court to address the subpoena with Danasha.  On the record, the district court spoke with Danasha and said, "Let the record reflect [Danasha] is receiving a copy of the subpoena for Friday, January 7th, 2022, at 10 a.m.  [Danasha], do you

---

[2] K.O. is African American.

understand you'll need to reappear Friday at that time?" Danasha responded, "Yep."

On the date Danasha was to appear again to testify, Lindauer learned that she had been in a car accident in Minnesota. Danasha called to say she would not be able to testify. The district court offered Lindauer the opportunity to present Danasha's testimony by live video, but Danasha declined the suggestion. Her excuse was that she did not have the technology to make a video presentation successful. Because Lindauer could not compel her testimony, he requested he be allowed to read the discovery deposition that was taken earlier in the case and argued Danasha now qualified as an "unavailable" witness under Iowa Rule of Evidence 5.804(a), so the hearsay deposition testimony should be allowed. That rule provides:

> A declarant is unavailable as a witness if the declarant:
>
> (1) Is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> (2) Refuses to testify about the subject matter despite a court order to do so;
> (3) Testifies to not remembering the subject matter;
> (4) Cannot be present or testify at the trial because of death or a then-existing infirmity, physical illness, or mental illness; or
> (5) Is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance.

Iowa R. Evid. 5.804(a). "[I]f a declarant is unavailable as a witness," that witness's former testimony, including deposition testimony, is "not excluded by the rule against hearsay." Iowa R. Evid. 5.804(b). Lindauer appealed the district court's ruling over this issue, which stated:

> The Court has reviewed both rule 5.804 and the cases referred to by the parties and having reviewed both the rule and the case law, I am going to find that the witness, [Danasha], is not unavailable for the purpose of the rule and I'm not going to allow the deposition to be read and would make some distinction.
>
> First of all, I'm concerned that this is not videotaped. The jury will have no opportunity to judge the demeanor of the witness as she would be testifying. Further, the purpose for which the deposition was taken was not for the purpose of evidence or—and it was not former testimony. For instance, in *State v. Music*, [No. 08-0993, 2009 WL 1676898, at *3 (Iowa Ct. App. June 17, 2009)] cited by the defense, I believe the offer in that case was of testimony from a probation revocation hearing which was actually, again, a contested proceeding in which the motivations of the parties in that case in questioning the witness were different than what they would have been in the present situation where the witness was merely being interrogated concerning the questions that were actually asked, which I have reviewed Court Exhibit 1, the deposition transcript.
>
> For those reasons, again, I will not treat the witness as unavailable pursuant to the hearsay rule and the request to read the deposition in lieu of her presence is denied.

Here, the district court did not address the factors found in rule 5.804(a) but instead discussed the purpose and presentation format of the deposition testimony. So we look to the 5.804 factors as the parties did in their appellate briefing. Most pertinent is factor (5) because Danasha was absent from the trial and Lindauer was not able "by process or other reasonable means to procure [Danasha's] attendance." *See* Iowa R. Evid. 5.804(a)(5). To rely on this rule, Lindauer had the burden to prove Danasha's unavailability and that he used diligence in trying to compel her attendance. *See Music*, 2009 WL 1676898, at *1. And as we said in *Music*, "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Id.* at *2; *accord id.* at *1–2 (finding two failed attempts to subpoena, use of an investigator to make contact, and research into the witness's passport status were reasonable efforts to compel the trial presence of the witness, so the deposition could be read

at trial). The State maintains that Lindauer did not meet the burden to show Danasha was unavailable. But it would be difficult to know what else Lindauer could have done to have compelled Danasha to appear and testify when she claimed she was stuck in Minnesota following a motor vehicle accident and knew she was subpoenaed to attend trial. Counsel for Lindauer detailed the dilemma and the effort made previously to compel attendance:

> My office received a message on 1-6-22 at 4:33 p.m. from the defense witness Danasha . . . . I didn't receive it until this morning. I didn't check my message until this morning. She indicated on the message that she was in Minnesota and her car was broken down and she said, I know I'm supposed to be in court tomorrow at 10 a.m. I called the courthouse and they told me to call you. And so then I called her this morning and she didn't answer, but then they called me back around 7. She said she was in a car accident on Tuesday and they are stranded in Minnesota and they're taking a bus back to Cedar Rapids and I asked her about what time. She said they weren't coming back or their bus ticket wasn't until 7 p.m. tonight and that she wouldn't be back here until tomorrow.
>
> As the Court is aware, this is a witness that I have struggled to serve a subpoena, such that when she arrived here for testimony when she was located—well, I guess let me start with a history.
>
> We had hired a process server in early December to have her served and they were unable to locate her. They did file a return of service saying incorrect address. That was the address she gave to us. My office had called her around the time mid-December when she couldn't be located and when she realized it was my office, she hung up and would refuse to take calls from us.
>
> We did hire a private investigator, Gratias Investigations has helped us with this case. So they hired, I think, Brian Shock to subcontract for them and he was able to get her served on New Year's Eve basically, through extenuating efforts to locate [Danasha]. And when we arrived at court on Friday, that was when— or excuse me, Monday, that was when the issue with the juror being ill and court was going to be continued, so I requested that the Court allow me to serve [Danasha] with a different subpoena, anticipating that I was going to have a similar issue having her served, and as the Court is aware, she was served in open court and the Court did tell her to be here at 10 a.m.
>
> So I spoke to her about her ability to be here. She says she will not be in Iowa now. I asked her about her electronic capability. She said all she has is an iPhone and they're staying with friends. I

asked her about her ability to appear by video, her appearance, that type of thing because it sounds like they're not in a good position and she basically indicated to me that she would not like to participate by video.

But here, we need not decide whether Lindauer proved Danasha was unavailable; even if she was, the court could still properly deny the admission of her deposition testimony because it lacked relevance. *See State v. Tech*, 240 N.W.2d 658, 661 (Iowa 1976) ("It is ordinarily within the trial judge's discretion to decide whether to exclude evidence on grounds of relevancy."); *see also State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020) ("[A] district court has no discretion to deny the admission of hearsay if the statement falls within an enumerated exception, subject, of course, to the rule of relevance under rule 5.403." (alteration in original) (citation omitted)). At trial, the State argued:

> There was no indication, based on the State's side of the investigation, that this witness had any relevant testimony to this case, so the deposition in this case was much more of a fact-finding investigation where the prosecutor . . . asked this witness basically why she was here, if she even knew why she was there, but it was not intended to be a supplement for trial testimony.

The trial court seemed persuaded by this argument. And relevancy of the testimony as presented in the deposition is problematic. The State correctly described what the testimony lacked by way of detail, arguing:

> If you read . . . the deposition transcript, you'll see that this witness was not able to say what day, was not able to identify the person the defendant was dancing with and for all we know, this could have been a different night that the defendant was in Cedar Falls with a different female.

With the lack of detail over the date Danasha saw the dancing between Lindauer and a woman, and with the inability to identify the woman as K.O., the trustworthiness and probative value of the deposition testimony is not sufficient to

allow its admission. *See State v. Liggins*, 978 N.W.2d 406, 432 (Iowa 2022) ("A vague statement that does not establish a clear fact may be less trustworthy.").

Finally, in its appellate briefing, the State, recognizing that the actions to compel the witness might constitute good faith efforts to secure her attendance, then advocated for a harmless error finding. The State asserts that hearsay evidence from the deposition testimony would not have affected the jury's finding of guilt because the statements offered would have been cumulative to other evidence that was admitted at trial. *See Hamilton v. O'Donnell*, 367 N.W.2d 293, 295 (Iowa Ct. App. 1985) (noting that, where other testimony was offered that filled in the gaps of the excluded evidence, "the exclusion [of evidence] constitute[s] harmless error"); *see also* Iowa R. Evid. 5.103 ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."). There was other testimony at trial about the dance floor antics. K.O. remembered that she was "dancing on [Lindauer]." Her roommate testified that she observed K.O. dancing, describing the moves as grinding because "she was kind of moving her bottom half on the male's bottom half." And her roommate commented that K.O. "just wasn't really acting like a drunk person, I guess." Finally, Lindauer testified that he and K.O. were dancing and kissing while on the dance floor and that K.O. gave him a "hickey." Thus, even if the district court should have allowed the deposition testimony to be read, there was already evidence specific to the interaction on the dance floor between Lindauer and K.O.[3]

---

[3] All the same, Lindauer confirmed at the end of the trial, after the evidence was presented, that he agreed to forego the effort to get Danasha's testimony. As we know, the district court suggested that Danasha might testify by video-conferencing. In a formal record, Lindauer's counsel summarized her discussion

**Conclusion.**

For all of the reasons discussed above, we affirm Lindauer's conviction.

**AFFIRMED.**

---

with Lindauer over "our ability to call [Danasha] via video conference and given the technical difficulty I think we would have struggled with to make that happen, Mr. Lindauer and I decided not to call her and so I just wanted the Court to make sure that Mr. Lindauer was okay with that." He responded in the affirmative when asked by the court. Thus, no one attempted to try the option suggested by the district court, and we do not know if that would have solved the problem.